## King, Appellant, v. Continental L. Ins. Co.

Argued October 26, 1931.

Before Trexler, P. J., Keller, Linn; Gawthrop, Cunningham and Baldrige, JJ.

*Herbert Welty*, and with him *Victor Frey*, for appellant.

*John G. Kaufman*, for appellee.

Opinion by Cunningham, J., March 5, 1932:

Carls C. King, the husband of plaintiff, died October 2, 1928, from bodily injuries received on the preceding day and "effected solely through external, violent and accidental means." At the time of his death a "Travel and Pedestrian Accident Policy," issued to him by the defendant and naming plaintiff as beneficiary, was in full force and effect. Among the provisions of the policy was one for indemnity in the sum of $1,000 for loss of life "by being struck or run over while walking or standing in or on a public highway, by any automobile or any vehicle then being propelled by steam, cable, electricity, naphtha, gasoline, horse, compressed air or liquid power, (excluding injuries sustained while working in a public highway; or while on a railroad right of way)."

Plaintiff, alleging that her husband lost his life "by being struck ...... while walking or standing in or on" Germantown Avenue, a public highway of the City of Philadelphia, "by a gasoline propelled motor

vehicle," brought her action in the municipal court of the County of Philadelphia to recover the indemnity. The defense was that the insured sustained his injuries, not "while walking or standing in or on a public highway," within the meaning of the contract of insurance, but while "working" thereon as a member of a repair gang employed by the Philadelphia Rapid Transit Company. The case was tried by a judge without a jury and resulted in the entry of a nonsuit; from the refusal to take it off plaintiff now appeals.

As this record comes before us the question involved is whether there was any evidence which, in the absence of the waiver of a jury trial, would have entitled the plaintiff to go to a jury.

These facts appear from the testimony adduced by plaintiff: On the day of the accident a "pole gang" of the Philadelphia Rapid Transit Company, consisting of six laborers, including the insured, a truck driver and a foreman, George Zink, was engaged in removing poles from a discontinued Germantown Avenue trolley line at a point where that avenue crosses Wissahickon Creek by a bridge. One pole in the vicinity of the bridge had been taken down and the workmen were preparing to remove another erected in, and approximately half way across, the creek bed and about twenty feet below the bridge level. The method used was to loosen the pole from its foundation and then, with the aid of machinery carried and operated on the truck, hoist it up to the bridge. Preparatory to the hoisting operation, some of the laborers went below to work at the base of the pole and two, King and Southern, remained on the bridge. They were standing along the western bridge railing, about four feet high, while the foreman was directing the movements of the truck, in order that the machinery on its rear end might be conveniently placed along the rail. As the truck backed toward the railing Southern gave

his attention to protecting the jacks placed underneath the tail-board to support it during the lifting. Zink testified: ''We were getting ready to take a pole out that was setting down alongside the bridge at Wissahickon Creek. The truck we had, had a tripod on the back of it. The tripod reached up in the air quite a bit, and had a cable with a hook running over the top of it which led to a winch. While backing the truck into position, as I was raising the hook over the railing so as not to catch on to it, all of a sudden I heard a yell, and had Mr. King caught between the tailboard of the truck and the railing of the bridge. ...... The only way I can see he got in there, the truck was coming back slow, and he tried to come from the left side of the truck through there, and it got him facing right in the truck, and I hollered to the driver 'go ahead Joe.' Just that quick he was out and took him to the hospital.'' This testimony was corroborated by Southern, the only other witness called by plaintiff.

In our opinion, the only reasonable conclusion from the evidence is that the insured's injuries were ''sustained while working in a public highway'' and that the case, therefore, falls within the language, and plain intendment, of the exception to the clause of the policy under which the suit was brought.

Judgment affirmed.